JOHN M. FRIEDMAN, Plaintiff, *v.* IRVING TRUST COMPANY, Defendant.

Municipal Court of New York, Borough of Manhattan, First District, November 9, 1937.

*Albert Hirst* [*David Siskind* of counsel], for the plaintiff.

*Paul E. Mead* [*William A. Onderdonk* of counsel], for the defendant.

EDER, J. The plaintiff maintained a checking account in the Huguenot Trust Company of New Rochelle, N. Y., which trust company, at the time, maintained an account with the defendant. The Huguenot Trust Company (hereafter called the Huguenot Bank) was not a member of the New York Clearing House; the defendant was such member.

On December 30, 1933, plaintiff deposited two checks with the Huguenot Bank, one for $1,000, and the other for $20. These checks were drawn on New York city banks; they were drawn and indorsed to the plaintiff's own order. In making the deposit plaintiff drew and presented to the Huguenot Bank the usual deposit slip, which contained a statement similar to that appearing on the pass book issued by the Huguenot Bank to plaintiff, and reads: " In receiving items for deposit or collection, this Bank acts only as depositor's collecting agent and assumes no responsibility beyond the exercise of due care. All items are credited subject to final payment in cash or solvent credits. This Bank will not be liable for default or negligence of its duly selected correspondent nor for loss in transit, and each correspondent so selected shall not be liable except for its own negligence. This Bank or its correspondent may send items, directly or indirectly, to any bank, including the payor, and accept its draft or credit as conditional payment in lieu of cash; it may charge back any item at any time before final payment, whether returned or not, also any item drawn on this Bank not good at close of business on day deposited."

This was a deposit for collection. December 30, 1933, was a Saturday and the checks did not reach the defendant until January 2, 1934, the intervening days being a Sunday and New Year's

Day, a legal holiday. On the morning of January 2, 1934, the day on which the defendant received the two checks and prior to the collection, the Huguenot Bank was taken over by the Banking Department of the State of New York and was not permitted to open for business on that day.

The defendant, on that date, collected the checks in question and credited the account of the Huguenot Bank with the amount of the checks. This, it claimed, it did in good faith and had fully discharged its obligation to the Huguenot Bank. There appears to be a dispute on the issue of good faith, but if it is material — though I do not think so — it appears by an examination of the defendant before trial that it had actual notice on the morning of January 2, 1934, that the Superintendent of Banks had forbidden the Huguenot Bank to receive any deposits or pay out any funds.

The Huguenot Bank acted only as plaintiff's collecting agent; the defendant, as subsequent collecting bank, acted as subagent. The credit given by defendant to the Huguenot Bank was given *after* the suspension of the Huguenot Bank; the credit on the defendant's books was given on the morning of January 2, 1934, while the check was not collected until three P. M. on that day. It appears to be stipulated that the proceeds were not only not collected but that the items themselves were not even received until after the Huguenot Bank had been closed. While the defendant claims it paid the proceeds of these checks to the Huguenot Bank, the actual fact is that the so-called " payment " was nothing more than a mere accounting item on its books after the suspension of the depositing bank; this so-called " payment " was neither a payment in currency nor an " unconditional credit " of a character recognized in law (See Neg. Inst. Law, § 350-a), and, if anything, it would appear that what the defendant did do, in effect, was to reduce on its own books an indebtedness due to it from the Huguenot Bank.

The facts, and the deposit made, under the mentioned conditions, created a special relationship of bailor and bailee — not that of debtor and creditor — and the title to the checks and to the proceeds of the collection, even if merged with the funds of the bank, remains in the depositor. (*Matter of Bank of Cuba*, 198 App. Div. 733.) Irrevocable credit must be given in order to constitute the bank the owner of the item. This case at bar is similar to *Matter of Vavoudis* (141 Misc. 823; affd., 233 App. Div. 672). The determining factor is that, prior to the closing, a debtor and creditor relationship did not exist between the bank and the depositor.

Both the law and the relationship between the parties created the defendant an agent, and unless the defendant performed the

duties and obligations incumbent upon it as such agent, it is liable to plaintiff for any resulting loss.

By the express terms of section 350-a of the Negotiable Instruments Law, defendant was the subagent of the plaintiff; the funds in question, upon collection by the defendant, were a trust fund for the benefit of the plaintiff. It is elementary that the subagent is subject to all the liability of the agent to the principal and the subagent owes to the principal the greatest degree of loyalty (Restatement of the Law of Agency, §§ 5-c, 422, 428); he must use due care to collect, and failure renders him liable. (*Florida Citrus Exchange* v. *Union Trust Co.*, 244 App. Div. 68.)

The Huguenot Bank acted as agent, but its agency terminated and was revoked when the Superintendent of Banks took possession; there was a revocation by operation of law. (*Matter of Vavoudis, supra.*) *Eo instante*, the agency of the defendant as subagent was revoked (Restatement of the Law of Agency, §§ 121 and 137); if it continued to act thereafter, it is responsible to plaintiff as principal (*People* v. *Nelson*, 143 Misc. 339); its authority to act as subagent fell with that of the Huguenot Bank.

It was the duty of the defendant, particularly when it had knowledge of the termination of business of the Huguenot Bank, and prior to the time of the collection and alleged payment of any proceeds of these checks, to refrain from proceeding with the collection of the items and to return them to the plaintiff or to the forwarding bank from which they had been received. This duty it wholly disregarded. Its action in dealing with the proceeds after notice of revocation of the agent's authority constituted a conversion of the plaintiff's property. (See *Wolf* v. *Title Guarantee & Trust Co.*, 251 App. Div. 354.) The defendant, it is clear, failed to fulfill and discharge its duty and obligation to plaintiff and the latter is entitled to recover.

The plaintiff, concededly having received, as a result of the reorganization of the Huguenot Trust Company, credit to the extent of $510 out of the total sum of $1,020, he is entitled to recover the difference; that is, the sum of $510, with interest, from the defendant. Judgment is, therefore, awarded the plaintiff against the defendant in the sum of $510, with interest. Ten days' stay.